298 S.E.2d 130

**Pamelia F. PORTER**

v.

**Roy PORTER.**

No. 15513.

Supreme Court of Appeals of
West Virginia.

Nov. 18, 1982.

Linda Kay Wichman, Little Lick Farm Legal Office, Barboursville, for appellant.

David J. Lockwood, Lockwood & Egnor, Huntington, for appellee.

PER CURIAM:

Pamelia F. Porter appeals from a final order of the Circuit Court of Cabell County, entered October 20, 1981, which found the appellant unfit to have custody of her three minor children and granted a change of

custody and the exclusive use and possession of the marital abode to Roy Porter, the appellee. The appellant contends that the evidence did not support the change of custody. We agree and we reverse.

The parties to this action were divorced on May 11, 1981, by order entered June 1, 1981. The appellant was granted care, custody and control of their children, two daughters, aged 14 and 12, and a 10-year-old son. The youngest child has been handicapped since birth and suffers from hydrocephalus (water on the brain), an open spine resulting in paralysis, scoliosis and a chronic ear infection. In addition, the appellant was granted the use of the marital home.

On July 15, 1981, the appellee filed with the circuit court a petition to modify the final divorce decree so as to grant him custody of the children and the use of the marital home. The petition charged the appellant with neglecting the children, raising them in an immoral atmosphere and being unfit to have custody. A hearing was held on October 19, 1981, following which the court, by order entered November 5, 1981, granted the change in custody based upon its finding that the appellant had been living with a man without benefit of marriage in the marital home. Upon the petition of the appellant, this Court granted a stay of execution of the circuit court's order to enable the appellant to perfect her appeal. On January 11, 1982, a hearing was held to supplement the record.

The appellant contends that the trial court did not consider the welfare of the children or their stated preference of custodian in reaching its decision. She also asserts that there was no showing that the change of custody would materially benefit the children and that the court's order was speculative. Finally she asserts that the circuit court erred in finding that the primary caretaker was not an issue.

The evidence shows that both parties were living with members of the opposite sex without benefit of marriage prior to the first custody hearing. The children were present in the homes of both parents during this period, however, no sexual activity took place in their presence. The appellee remarried after the petition was filed and before the hearing took place. He and his wife were expecting their first child in five months at the time of the supplemental hearing. The appellant had not remarried at that time.

The appellee testified that he would help his wife care for the children before and after work. His wife testified that she was willing to have the children in her home, that she would help her husband as much as she could and that she would try to take care of the handicapped child, who needs constant attention. Neither the appellee nor his wife could describe the child's medical problems, nor had they consulted with his doctors since the entry of the change of custody order to familiarize themselves with his history or requirements.

The appellee and his wife have not cared for the children for a longer period than a weekend. They have never bathed the handicapped child, who must be lifted into the bath tub, and his sisters usually changed his diapers during the weekends they spent at the appellee's home. The appellee admitted to drinking when the children were visiting. The appellee's wife has five natural children from a former marriage. She testified that she had custody but permitted the children to live with their father because they wanted to. Her former husband testified that he was granted custody of his children by the circuit court of another county after he filed a petition alleging abandonment.

At the hearing, all three children expressed a desire to live with the appellant. Despite evidence that the appellant was a good caretaker and went beyond what was required by the Department of Welfare in order to provide for the comfort of her handicapped son, the lower court concluded the appellant unfit to have custody solely upon its finding that the appellant was living with a member of the opposite sex without benefit of marriage.

■ It is well-established in this jurisdiction that the paramount and controlling factor in custody cases is the welfare and protection of the child. "In a contest in-

volving the custody of infant children, their welfare is the guiding principle by which the discretion of the trial court will be controlled and on appeal, its determination of custody will not be set aside unless there was a clear abuse of discretion." Syl. pt. 4, *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977). "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." Syl. pt. 2, *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977).

■ Recently, this Court discussed the role a parent's remarriage or extramarital relationship plays in the trial court's determination of the parent's fitness to retain custody of his or her children. In Syllabus Point 3 of *S.H. v. R.L.H.*, 169 W.Va. 550, 289 S.E.2d 186 (1982) we held:

> Where one parent has been awarded the custody of minor children by the court and that parent either remarries or undertakes a relationship with another adult who is either a permanent resident or regular overnight visitor in the home, the remarriage or existence of such extramarital relationship constitutes a sufficient change of circumstances to warrant a reexamination of child placement; however, neither remarriage nor an extramarital relationship *per se* raises any presumption against continued custody in the parent originally awarded such custody.

■ Our case law clearly indicates that a change of custody is not justified where, as here, the only basis for the court's decision is the existence of an extramarital relationship on the part of the parent originally awarded custody. There must also be a showing that the parent's relationship with another adult has a deleterious effect upon the child and that the child will materially benefit from the change of custody.

There is little evidence in the record which would justify such a conclusion by the trial court. There is no evidence that the appellant neglected the children or engaged in sexual activity in their presence. The children testified that they liked the man in question, that he didn't mistreat them, that he did not drink in their home and that he helped with odd jobs around the house, such as chopping wood, and provided transportation for the family. Similarly there was little evidence that the change of custody would materially promote the welfare of the children in the sense that the appellee and his wife could provide more care, love or material advantage to the children than their mother was providing.

Consequently we conclude that the lower court abused its discretion in ordering a change of custody, and we reverse the order of the Circuit Court of Cabell County which awarded the appellee custody of the parties' three minor children and the use of the marital home.

Reversed.