**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Melody A., Petitioner Below,**
**Petitioner**

**FILED**

**June 14, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 14-1112** (Boone County 12-D-218)

**Todd A., Respondent Below,**
**Respondent**

## MEMORANDUM DECISION

Petitioner Melody A.,[1] by counsel Richard L. Vital, appeals the Circuit Court of Boone County's September 26, 2014, order refusing her petition for appeal from the family court's ruling. Respondent Todd A., by counsel Steven M. Thorne, filed a response. Petitioner filed a reply. The guardian ad litem ("guardian"), Donna Pratt, filed a response on behalf of the parties' children in support of the circuit court's order. On appeal, the petitioner alleges that the family court erred in granting primary custody of the parties' children to the respondent.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon consideration of the standard of review, the briefs, oral argument, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21(c) of the Rules of Appellate Procedure.

## I.  FACTUAL AND PROCEDURAL HISTORY

In April 2002, the parties were married in Kentucky. There were two children born as a result of the marriage: V.A., born in 2006, and A.A., born in 2008. At some point, the parties moved to Boone County, West Virginia, and resided there for at least one year prior to separation. The parties separated in July of 2012, and the petitioner initiated divorce proceedings very shortly thereafter. The petitioner pled irreconcilable differences as a basis for divorce and sought custody of the children.

In August 2012, the family court held a temporary custody hearing. The petitioner testified that after the parties' separation she relocated to Ohio with the children to obtain employment and moved the family court to allow the children to remain in her custody. The respondent objected to the relocation and argued that the petitioner had moved to Ohio

---

[1] Following this Court's long-established practice in cases involving children, we use the parties' initials.

1

to further her relationship with a new boyfriend. The respondent also argued that he should be the primary custodian of the children because of his prior care for them and that it was contrary to their best interests to relocate. The guardian recommended that the children remain primarily with the petitioner. In an order dated August 28, 2012, the family court granted the petitioner temporary primary custodial responsibility of the children and established parenting time for the respondent. In addition, the family court ordered, based upon the respondent's objections and the recommendations of the guardian, that the children should have no contact with the petitioner's boyfriend.[2] The guardian recommended no contact because she deemed it confusing to the children and not in their best interest to introduce significant others to them so soon after the parties' separation. Subsequently, the no contact rule was extended to the significant other of the respondent also.

In June 2013, the family court held a status hearing pursuant to the respondent's motion to address summer parenting time. The respondent moved for modification of the parenting plan to award him primary custody of the children during the summer months to make up for time lost during the school year. The family court granted the respondent's motion.

From November 2012 through July 2013, the respondent filed three contempt petitions with the family court in which he alleged that the children had contact with the petitioner's boyfriend. In the third contempt petition, which was filed in July 2013, the respondent alleged that the petitioner's boyfriend went to Myrtle Beach, South Carolina with the petitioner and her children. At a subsequent hearing, the family court received evidence regarding the allegations in the contempt petition.

In an August 14, 2013, order, the family court found that the petitioner acknowledged on the record that she was aware of the court's order prohibiting the children's contact with significant others, and that she willfully violated the order. The family court found from the evidence that the children were showing visible signs of stress and anxiety as a result of the petitioner's actions in violating the court's order, and that it was harmful for the children to remain under the current parenting plan. The family court also determined that it was in the best interests of the children to transfer primary custody of the children to the respondent "due to the Petitioner's repeated and continuing disregard of the court orders." Finally, the court ruled that pursuant to W. Va. Code §§ 48-9-401 (2001) and 402 (2001), a substantial change of circumstances had arisen that was not contemplated making a modification of custodial responsibility in the best interests of the children.

---

[2]During oral argument before this Court, the guardian indicated that her recommendation regarding the children's contact with the parties' significant others was not based on her training as a guardian but rather was the result of her work experience.

In October 2013, the petitioner filed a petition for appeal of the family court's August 14, 2013, order alleging that the family court erred in granting the respondent primary custody of the children. The circuit court denied the appeal, and the order was not appealed to this Court. In November 2013, the petitioner filed a motion to disqualify the family court judge based upon a judicial ethics complaint the petitioner filed against the judge. The petitioner alleged in her disqualification motion that the family court was not impartial in this matter. The family court summarily denied the disqualification motion.

In December 2013, a final hearing was held on the divorce proceedings. In the family court's final divorce decree, entered on July 14, 2014, the family court granted primary custody of the parties' children to the respondent. The family court ordered that while the children were to remain primarily with the respondent, the petitioner was allowed parenting time three weekends per month and was granted primary custody of the children during the summer months. The family court indicated that

> [t]he Court's ruling with regard to parenting of the parties' infant children is based on a totality of evidence received by the Court throughout the protracted litigation herein as well as this Court's ruling at the August 14, 2013, hearing wherein the Court found that it was harmful for the children to remain under the existing parenting plan and that the best interest of the children required a transfer of primary parental responsibility to the Respondent due to the Petitioner's repeated and continued disregard of the Court's order which resulted in emotional harm to the children which did manifest itself in the visible physical anxiety and stress exhibited by the children as a result thereof which was represented in the testimony of the Petitioner herself together with that of the Respondent's mother. The Petitioner's continued actions in disregard of the Court's rulings also brings [sic] into question her capacity to make appropriate decisions with regard to her children's best interest. This Court's order with regard to primary parenting is also based on the recommendation of the Guardian Ad Litem at the December 12, 2013, hearing as well as a totality of all evidence received by the Court throughout the litigation herein. The Court also taking note that the child of the parties advised the Guardian Ad Litem that she wanted to remain in the primary care of the Respondent.

In September 2014, the circuit court refused the petitioner's appeal of the family court's final divorce decree, ruling that the family court's findings were not clearly

3

erroneous and that it agreed that the petitioner exposed the children to emotional harm. It is from this order that the petitioner now appeals.

## II. ANALYSIS

We have previously established the following standard of review:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). Regarding the presence of clear error, this Court has held:

> A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). We have further indicated that "an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them." *Gentry v. Mangum*, 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995). Last but not least, "'[i]n a contest involving the custody of an infant,the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin* 131 W. Va. 302." Syl. pt. 1, *State ex rel. Cash v. Lively*, 155 W. Va. 801, 187 S.E.2d 601 (1972). With these standards in mind, we now proceed to address the petitioner's assignments of error.[3]

---

[3] We note that the petitioner's brief violates Rule 10(c)(4) of the Rules of Appellate Procedure in that the petitioner's statement of the case is not supported by appropriate and specific references to the appendix. We urge parties to adhere to our Rules of Appellate Procedure when filing pleadings with this Court.

4

## A. Change of Child Custody

The petitioner's primary argument is that the family court erred in transferring primary custody of the children by not properly considering W. Va. Code § 48-9-206 (2001). The petitioner also asserts that the transfer of child custody was improper absent a showing that she was unfit as a parent. We disagree.

According to W. Va. Code § 48-9-206(a), in part,

> Unless otherwise resolved by agreement of the parents under section 9-201 [§ 48-9-201] or unless manifestly harmful to the child, the court shall allocate custodial responsibility so that the proportion of custodial time the child spends with each parent approximates the proportion of time each parent spent performing caretaking functions for the child prior to the parents' separation[.]

The petitioner contends that according to the uncontroverted evidence presented below, prior to the parties' separation, the petitioner spent almost all of the time with the children performing caretaking functions while the respondent was at work. The petitioner asserts that the family court ignored this evidence and failed to properly apply W. Va. Code § 48-9-206(a) in allocating custodial responsibility.

In placing the primary custody of the children with the respondent, the family court found that the children were showing visible signs of stress and anxiety due to the petitioner's repeated disregard of the circuit court's order such that it was harmful for the children to remain under the current parenting plan. In support of its finding, the family court cited the testimony of the paternal grandmother who said that when the younger child disclosed to her that they had been to the beach with the petitioner's boyfriend, the older child immediately began to cry and begged her grandmother not to tell the respondent. The paternal grandmother also testified that the children showed visible signs of stress.[4] The circuit court further found that the petitioner's action in disregarding the family court's order called into question her capacity to make appropriate decisions regarding the children's best interests. As a result, the family court modified the parenting plan pursuant to W. Va. Code § 48-9-401(a) which provides in part:

> a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry

---

[4] According to the guardian's response brief, the petitioner testified at the family court hearing that the children were aware that they were not be to be around the petitioner's boyfriend.

5

of the prior order and were not anticipated therein, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

We conclude that the circuit court did not err in finding that the petitioner's decision-making caused emotional harm to the children, and that transferring primary custody of the children to the respondent was in the children's best interests.[5]

## B. Violation of Court Order

Next, the petitioner asserts that the family court erred in removing the children from her as a manner of punishing her for violating the court's order. The petitioner is correct that "[a]n award of custody to one parent should not be used as a means of punishing the other parent." *Rowsey v. Rowsey*, 174 W. Va. 692, 696, 329 S.E.2d 57, 63 (1985) (citations omitted). However, we find that the family court did not award primary custody to the respondent in order to punish the petitioner. Upon our review of the record, we conclude that the family court transferred primary custody of the children to the respondent based upon several factors. Specifically, the family court determined that the petitioner's violation of the court order was causing emotional harm to the children. Additionally, the oldest child indicated that she wanted to continue to reside with the respondent. Further, the petitioner's repeated violations of the family court's order called into question her decision making regarding the best interests of her children. Therefore, we conclude that the family court did not transfer custody of the children as a means to punish the petitioner.

This Court does wish to make clear, however, that the provision in the family court's order prohibiting the children's contact with the parties' significant others was not proper. Under our law, a custodial parent's relationship with another adult is not *per se* a cause for modification of custody. Pursuant to W. Va. Code § 48-9-401(c)(2), a parent's remarriage or cohabitation does not justify a significant modification of a parenting plan where harm to the child is not shown. *See also* syl. pt. 3, in part, *S.H. v. R.L.H.*, 169 W. Va. 550, 289 S.E.2d 186 (1982) ("neither remarriage nor an extramarital relationship *per se* raises any presumption against continued custody in the parent originally awarded such custody."); *Rowsey*, 174 W. Va. at 695, 329 S.E.2d at 60 ("[t]he fact that a custodial parent and her children are in the presence of a woman who is reputed to be a lesbian is not a ground for changing custody to the noncustodial parent.").

In addition, the violation of a court order, absent a showing that harm resulted to the children or that it would be in the children's best interests to change custody, is not a proper

---

[5] We note that the appendices submitted by the parties do not include transcripts of hearings before the family court, a fact which limits our review of the family court's findings of fact.

ground for the changing of child custody. *Rowsey,* 174 W. Va. at 696, 329 S.E.2d at 61 (absent a showing that a change of custody would materially promote the welfare of the children, "the violation of a court order is not a proper ground for changing custody." (Citations omitted)). For this reason, it would have been error for the family court to change custody of the children to the respondent based solely on the fact that the petitioner violated the family court's order and without a showing that harm to the children resulted from the violation of the order. As previously indicated, however, the family court found that the petitioner's repeated disregard of the family court's order caused emotional harm to the children. Therefore, we conclude that the family court did not grant primary custody of the children to the respondent to punish the petitioner for violating a court order.

### C. *Petitioner's Complaint Against Attorney*

The petitioner also asserts that her attorney should have appealed the restriction placed on the children's contact with her boyfriend. However, the record is clear that the petitioner did not raise this issue in her petition for appeal to the circuit court. "This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. pt. 2, *Sands v. Sec. Trust Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958). Because the circuit court did not decide this issue on appeal below, we decline to consider it. Therefore, we reject the petitioner's argument on this issue.

### D. *Family Court Judge's Disqualification*

The petitioner further avers that the family court judge should have disqualified herself from hearing the case after the petitioner filed a judicial ethics complaint against her.[6] The petitioner's disqualification motion stated the following:

> Petitioner has filed a complaint with the Judicial Ethics Commission against the Boone County Family Court Judge . . . . as a result of her rulings and conduct in the present case and, as such, your petitioner feels strongly that the said judge cannot fairly and impartially continue to preside over this case, hear the evidence, and make an impartial decision concerning the custody of the infant children of the parties. Your petitioner sincerely believes that the judge's impartiality might reasonably be questioned inasmuch as your petitioner has filed a judicial ethics complaint against the judge hearing this case.

The family court judge denied the petitioner's disqualification motion and proceeded to reside over the parties' case. The petitioner now alleges that the family court's denial of

---

[6] Counsel for the petitioner informed this Court during oral argument that the petitioner's ethics complaint against the family court judge was summarily dismissed.

the disqualification motion was in violation of Rule 58(a) of the *Rules of Practice and Procedure for Family Court.*

According to Rule 58(a) "[t]he procedure for disqualification of family court judges shall be the same as that set forth in Trial Court Rules for Trial Courts of Record, Rule 17." Rule 17.01(b) of the *Trial Court Rules for Trial Courts of Record* provides that when a judge receives a motion for disqualification, "regardless of whether the judge finds good cause and agrees to the disqualification motion or not, the judge shall," inter alia, "(1) proceed no further in the matter; (2) transmit forthwith to the Chief Justice a copy of the motion and certificate, together with a letter stating the judge's response to the motion and the reasons therefor, including such matters and considerations as the judge may deem relevant." The petitioner claims that the family court judge erred in not following this procedure.

Although the family court should have transmitted the motion for disqualification to the Chief Justice, the failure to do so does not constitute grounds for reversal of the custody ruling in this case. According to Trial Court Rule 17.01, a motion for disqualification must state, among other things, the facts and reasons for disqualification, including the specific provision of Canon 3E(1) of the *Code of Judicial Conduct* asserted to be applicable. The petitioner's motion for disqualification was insufficient in that it failed to allege facts to support a claim that the family court judge was not impartial and it failed to cite the applicable canon of the Code of Judicial Conduct. Clearly, the filing of an ethics complaint against a judge alone is not a ground for the judge's disqualification. Otherwise, a litigant could remove a judge from hearing his or her case simply by filing a meritless ethics complaint against the judge. Therefore, we find that the family court did not commit reversible in denying the petitioner's motion for disqualification.

### E.  The Guardian's Proposed Parenting Plan

Finally, the petitioner argues that the family court erred in interpreting the guardian's proposed parenting plan because the parenting plan did not recommend that the children remain primarily with the respondent. According to the "Report and Recommendations of Guardian ad litem" included in the appendix, the guardian indicated "[t]hat it does not appear in the best interests of the infant children to change custody from the Respondent to the Petitioner, given the present circumstances and the children appear to have stabilized with the change." Therefore, we reject the petitioner's argument that the guardian did not recommend that the children remain primarily with the respondent.

For the foregoing reasons, we affirm the Circuit Court of Boone County's September 26, 2014, order refusing the petitioner's appeal of the family court's order.

Affirmed.

**ISSUED:**

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Menis E. Ketchum

**CONCURRING IN PART AND DISSENTING IN PART:**

Justice Margaret L. Workman

Chief Justice Ketchum, dissenting:

The majority accurately states that, under West Virginia law, a custodial parent's relationship with another adult is not *per se* a cause for modification of custody. In that regard, syllabus point 3 of *S. H. v. R. L. H.*, 169 W.Va. 550, 289 S.E.2d 186 (1982), holds:

> Where one parent has been awarded the custody of minor children by the court and that parent either remarries or undertakes a relationship with another adult who is either a permanent resident or regular overnight visitor in the home, the remarriage or existence of such extramarital relationship constitutes a sufficient change of circumstances to warrant a reexamination of child placement; *however, neither remarriage nor an extramarital relationship per se raises any presumption against continued custody in the parent originally awarded such custody.*

(emphasis added) *Accord* syl., *Hager v. Hager*, 214 W.Va. 619, 591 S.E.2d 177 (2003); syl. pt. 3, *Porter v. Porter*, 171 W.Va. 157, 298 S.E.2d 130 (1982). Moreover, as the majority acknowledges, *W.Va. Code*, 48-9-401(c)(2) [2001], provides that, unless the parents have agreed otherwise, a parent's "remarriage or cohabitation" does not justify a significant modification of a parenting plan, "except where harm to the child is shown." *See generally* Annotation, *Custodial Parent's Sexual Relations with Third Person as Justifying Modification of Child Custody Order*, 100 A.L.R.3d 625 (Cum. Supp. 2016).

9

Here, the majority affirms the September 26, 2014, order of the circuit court which upheld the transfer of primary custody of the children from the mother to the father. In so holding, the majority accepts the conclusion that the children were exposed to emotional harm because the mother wilfully violated a court order that the children were to have no contact with the mother's boyfriend. The circuit court found the findings of the family court judge to be "not clearly erroneous," and the majority suggests the decision of the circuit court was not an abuse of discretion and in the children's best interests.

However, in my dissent in *Owen v. Owen*, 233 W.Va. 521, 528, 759 S.E.2d 468, 475 (2014), I stated that the standards of review applied by a circuit court, and this Court, to the decision of a family court judge, "while helpful, are no substitute for the true facts." In the case now before us, two matters acknowledged in the majority opinion are especially troublesome. First is footnote five of the majority opinion which states: "We note that the appendices submitted by the parties do not include transcripts of hearings before the family court, a fact which limits our review of the family court's findings of fact." As this Court has frequently said, in the absence of an adequate record on appeal, "this Court is greatly at sea without a chart or compass." *Workman v. Workmen's Comp. Comm'r*, 160 W.Va. 656, 662, 236 S.E.2d 236, 240 (1977). Consequently, the lack of transcripts in this case undermines this Court's review of the transfer of custody.

Second, the majority opinion states that "the no contact rule was extended to the significant other of the respondent [father] also." Given that statement, it is difficult to understand how the children will benefit from a transfer of custody from the mother to the father, especially where no evidence of misconduct on the part of the mother's boyfriend has been set forth in the majority opinion.

I, therefore, respectfully dissent.

Justice Margaret L. Workman, concurring in part and dissenting in part:

The majority concludes that the family court properly modified the subject parenting plan to transfer primary custody to respondent based on a "best interests" analysis. However, I find that the record presented and the family court's order are devoid of sufficient factual development to support such a conclusion. As is evident from review of the August 14, 2013, order transferring custody, the sole consideration of the family court was the petitioner's violation of the court's "no contact" order regarding her significant other. There is no analysis whatsoever about whether respondent's care better served the children's best interests, as is the required statutory consideration. Therefore, while I concur with the majority's rejection of petitioner's arguments regarding her

attorney's failure to appeal, the family court judge's disqualification, and the family court's interpretation of the guardian ad litem's parenting plan, I dissent to its conclusion that custody was properly transferred to respondent based on the record presented and would remand for further development of that issue.

As properly noted by the majority, West Virginia Code § 48-9-401(a) permits modification of a parenting plan order if a "substantial change has occurred in the circumstances of the child or of one or both parents and a modification is *necessary to serve the best interests of the child*." (emphasis added). In the instant case, the family court found that petitioner's continual violation of the "no-contact" order regarding her significant other caused "visible signs of stress" to the infant children. Ostensibly,[7] the only evidence of this stress was one of the children crying when the other advised their grandmother that they had been in the significant other's presence. Although obviously not an optimal situation for the children, this scant evidence appears to be the sole basis upon which this significant change of custody was premised.

As the majority correctly notes, the prohibition on the children's contact with petitioner's significant other was plainly improper. Nonetheless, there is no question that petitioner's repeated violation of the order was not only contemptuous, but had at least some degree of adverse impact upon her children. While this factor was certainly a proper consideration for the family court, it is but part of the equation. A proper "best interests" analysis must include not only whether petitioner's primary custody no longer best serves their interests under the change of circumstances, but, more importantly, whether primary custody with respondent *would* serve their best interests. The family court order and record presented contain no information about the care-giving abilities of respondent or his work-life responsibilities, despite the fact the children were being transferred from their primary custodian. A subsequent interview with the guardian ad litem, in fact, revealed that the younger child was having difficulty being away from petitioner. Moreover, the record cursorily suggests that the children are cared for by their paternal grandmother while in respondent's custody, to some degree. If true, the record contains absolutely no discussion of the circumstances, degree, and type of care provided by the paternal grandmother in addition to and/or in the stead of respondent.

While failure to follow a court order demonstrates a lack of respect for the judicial process, there are other sanctions that could have been applied. Further, the lower

---

[7] Neither party provides transcripts or audio recordings of any of the proceedings below.

court should have had a factual and legal basis for the establishment of the "no-contact" rule.

Therefore, I respectfully dissent to the majority's conclusion that the record presented and family court's analysis was sufficient to substantiate a modification of the parenting plan in accordance with West Virginia Code § 48-9-401(a) and would remand for further factual development of respondent's care-giving abilities such that the court could properly ascertain which parent serves the children's best interests.